972 A.2d 1141

BERK COHEN ASSOCIATES AT RUSTIC VILLAGE,
LLC, PLAINTIFF–APPELLANT, v. BOROUGH OF
CLAYTON, DEFENDANT–RESPONDENT.

Argued March 24, 2009—Decided June 23, 2009.

434 

*Stephen E. Samnick* argued the cause for appellant (*The Samnick Law Group*, attorneys).

*Gary M. Marek* argued the cause for respondent (*Mr. Marek* and *Timothy D. Scaffidi*, attorneys).

*Gary D. Gordon* submitted a brief on behalf of *amicus curiae* New Jersey Apartment Association (*Feinstein, Raiss, Kelin & Booker*, attorneys).

Justice LONG delivered the opinion of the Court.

At the heart of this case is *N.J.S.A.* 40:66–1.3(a), which establishes the procedures to be followed when a municipality provides solid waste collection services to its residents. In particular, the statute sets up a scheme in connection with multifamily dwellings that requires either reimbursement for the solid waste collection costs up to a stated cap, or the provision of those services "in the same manner as provided to the residents of the municipality who live along public roads and streets." *N.J.S.A.* 40:66–1.3(a).

Here, the municipality decided to satisfy its obligation under *N.J.S.A.* 40:66–1.3(a) by offering plaintiff, the owner of a garden apartment complex, the same curbside trash pickup that it provided to other municipal residents. Plaintiff challenged that decision on equal protection grounds, claiming that the mandated curbside accumulation of the garbage of its five hundred residents was an eyesore and a health hazard, and was thus not the equivalent of what was provided to other municipal residents. After a trial, the

trial judge agreed, declaring that "[c]urbside pickup in this instance is unhealthful, unsanitary, utterly inefficient, unsightly and unreasonable," and "not the functional equivalent" of the waste disposal services provided to other residents in the municipality. She therefore ordered the municipality to exercise the reimbursement option in *N.J.S.A.* 40:66–1.3(a).

The Appellate Division reversed, concluding that the municipality discharged its statutory and constitutional obligations by providing the apartment complex with "the same type and frequency of solid waste collection services offered to residents who live along public roads." *Berk Cohen Assocs. at Rustic Vill., LLC v. Borough of Clayton*, 402 *N.J.Super.*, 409, 429, 954 *A.*2d 537 (App.Div.2008). We granted certification, 197 *N.J.* 15, 960 *A.*2d 745 (2008), and now reverse.

## I.

Plaintiff, Berk Cohen Associates at Rustic Village, LLC, owns and operates Rustic Village, a garden apartment complex located in Clayton. The seven buildings in Rustic Village contain 164 units and house approximately five hundred residents. An approximately 380–foot private entrance road provides Rustic Village with access to Delsea Drive, a public roadway.

Historically, and at plaintiff's expense, a private trash-removal company had collected trash from on-site dumpsters located on the premises of Rustic Village. On October 8, 2002, plaintiff sought reimbursement from defendant, Borough of Clayton ("Borough"), for the cost of the dumpster service pursuant to *N.J.S.A.* 40:66–1.3(a). That statute requires any municipality that provides solid waste collection services to its residents to either "reimburse a multifamily dwelling" for the cost of those services, limited to the amount the municipality would have expended if it provided the same services as those provided to residents who live along public roads, or, "[a]lternatively, . . . provide [those] services in the same manner as provided to the residents of the municipality who live along public roads and streets." *N.J.S.A.* 40:66–1.3(a).

In response, by letter dated February 13, 2003, the Borough declined to reimburse plaintiff, but offered once-a-week curbside collection, which would require plaintiff to transport its five hundred tenants' trash to "the curb on the public roadway known as Delsea Drive."

The offered services were consistent with those provided to all residents of the Borough pursuant to Chapter 60 of the Borough Code. In particular, the Borough provides "garbage and trash collection ... to all premises within the borough on a weekly basis." To avail themselves of that service, residents must place their trash "at the curbline ... before 4:00 a.m. on the days designated for collection." The Borough instructed plaintiff that "[a]ll trash is to be stored in receptacles, as described in 60–1," which contemplates "suitable ... trash bags with twist ties" and "closely covered receptacles."

By letter dated March 10, 2003, plaintiff objected to the Borough's offer, reiterated its demand for reimbursement, and alternatively requested on-premises dumpster service from the Borough:

> As you are aware, [plaintiff] is due reimbursement for trash collection costs for 2002 [and 2003]. . . .
>
> . . .Your offer of curbside pickup along Delsea Drive is both impractical and unhealthy. [Plaintiff] will authorize curbside pickup in the complex. However, as your current trash hauler provides container service, it would make better sense for your hauler to pick[ ]up the current containers used by the complex.

The Borough refused both alternatives and, on December 26, 2003, advised plaintiff that it "will pick up Rustic Village Apartment trash placed along the curb line of Delsea Drive," provided plaintiff adheres to the requirements of the Borough's ordinance.

On March 25, 2004, the Borough enacted Resolution 77–2004, which authorized curbside pickup at plaintiff's complex. Although plaintiff continued to employ private dumpster services throughout the ensuing year, it eventually elected to accept the Borough's offer. Plaintiff thus removed its dumpsters on April 1, 2005, and instructed its maintenance staff to consolidate the tenants' trash and transport it from on-site corrals to the public curb for

collection on Thursday mornings. In doing so, plaintiff abided by the municipal rules established for curbside garbage collection by using approved containers. After attempting to implement the curbside pickup program on April 6 and 13, 2005, and, at least in part because the police chief ordered them to remove the refuse that they had lugged out onto Delsea Drive or face arrest, plaintiff discontinued employment of the Borough's service, deeming the arrangement "inconvenient," "unsanitary," and "unsightly." Plaintiff thus resumed its provision of private dumpster services.

On July 6, 2005, plaintiff filed a complaint in lieu of prerogative writs against the Borough seeking the statutory reimbursement for waste-disposal costs it had incurred from 2002 through 2004 on the grounds that the curbside pickup provided by the Borough was "an abuse of the police power" and denied plaintiff equal protection. Plaintiff also sought judgment ordering the Borough to collect trash from the complex by use of the on-site dumpsters, and declaring null and void the municipal ordinance requiring curbside pickup along Delsea Drive.

At trial, plaintiff's witnesses established through testimony and photographs the conditions created when the large amount of trash generated by the five hundred residents of the complex was placed at the curb. Included in their testimony was the fact that the agglomeration was unsightly, bags were broken by animals, trash was strewn across the street, bees were swarming about the area, and that it was "a mess." Of that testimony, the trial judge stated:

> The Court determines that these witnesses were credible. Each testified in a direct, articulate and straightforward manner. Nothing in the body language or demeanor of either suggested the least hint of deceptiveness. *Their testimony was unrefuted by the Borough.* Indeed, it was corroborated by the photographic evidence which renders their observations self-evident.
>
> [ (Emphasis added).]

On the basis of the evidence, the trial judge ordered reimbursement, finding that "[c]urbside pickup in this instance is unhealthful, unsanitary, utterly inefficient, unsightly and unreasonable," and that requiring plaintiff to haul its residents' trash to the curb

"jeopardizes and offends not only the health and welfare of plaintiff's tenants but all members of the community." The judge concluded that curbside pickup at Rustic Village "subjects [plaintiff's tenants] to a lesser status," and thus violates "the equal protection considerations" underlying *N.J.S.A.* 40:66–1.3.

The Appellate Division reversed, reasoning that "the Borough satisfied its obligation to plaintiff under *N.J.S.A.* 40:66–1.3 [by] providing plaintiff with the same type and frequency of solid waste collection services offered to residents who live along public roads." *Berk Cohen Assocs., supra,* 402 *N.J.Super.* at 429, 954 *A.*2d 537. After a review of the applicable statutory and case-law principles, *id.* at 423–27, 954 *A.*2d 537, the panel concluded that

> *N.J.S.A.* 40:66–1.3 was enacted solely to clarify the discretionary choice given to a municipality to reimburse a property owner who did not receive a municipal service, *N.J.S.A.* 40:66–1(b), and preserve equality among its residents by requiring reimbursement to a multifamily dwelling if the municipality did not offer it the same free solid waste collection service.
>
> [*Id.* at 427, 954 *A.*2d 537.]

Although the panel acknowledged the trial judge's concerns over "the impracticability of plaintiff availing itself of the curbside garbage collection offered, and the eyesore and unsanitary condition created by its brief attempt to place the trash curbside," it declared that the trial judge "misperceived equal protection principles ... [by] assessing the merits of on[-]site dumpster service over curbside pickup in receptacles rather than comparing the services offered to plaintiff with those provided to all other residents of the Borough." *Id.* at 428, 954 *A.*2d 537.

Plaintiff filed a petition for certification, which we granted. 197 *N.J.* at 15, 960 *A.*2d 745.

## II.

Before us, plaintiff essentially reiterates its equal protection argument, relying on the trial judge's findings to support its contention that it was subjected to differential treatment and to a lesser status than all other similarly situated residents of the municipality.

The Borough counters that it has satisfied its statutory and constitutional obligations to plaintiff by providing "services in the same manner" as it does for all its residents. *N.J.S.A.* 40:66–1.3(a).

Amicus curiae, the New Jersey Apartment Association, supports plaintiff's arguments, including its contention that dumpster usage is the healthiest, safest, and most cost-effective method of trash removal, and that it should be endorsed by the requirement of statutory reimbursement.

### III.

Garbage collection is a subject that is " 'intimately associated with the public health.' " *Pleasure Bay Apartments v. City of Long Branch,* 66 *N.J.* 79, 85, 328 *A.*2d 593 (1974) (quoting *Marangi Bros., Inc. v. Bd. of Comm'rs of Ridgewood,* 33 *N.J.Super.* 294, 300, 110 *A.*2d 131 (App.Div.1954)). Indeed, the Legislature has declared that the handling of

> solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; [and] that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection and disposal service or efficient utilization of such waste[.]
>
> [*N.J.S.A.* 13:1E–2(a).]

In the first instance, it is the duty of the party who has generated the garbage " 'to see to it, by proper diligence, that no nuisance arises therefrom which endangers the public health.' " *Pleasure Bay, supra,* 66 *N.J.* at 84, 328 *A.*2d 593 (quoting *Cal. Reduction Co. v. Sanitary Reduction Works of S.F.,* 199 *U.S.* 306, 321, 26 *S.Ct.* 100, 104, 50 *L.Ed.* 204, 211 (1905)); *see also WHS Realty Co. v. Town of Morristown,* 323 *N.J.Super.* 553, 562, 733 *A.*2d 1206 (App.Div.) ("A municipality is not mandated to provide for municipal garbage removal." (citation omitted)), *certif. denied,* 162 *N.J.* 489, 744 *A.*2d 1211 (1999). However, because " 'the collection and disposal of garbage are so intimately associated with the public health [it is also recognized] that stringent control thereof is indispensable.' " *Pleasure Bay, supra,* 66 *N.J.* at 85,

328 *A*.2d 593 (alteration in original) (quoting *Marangi Bros.,
supra*, 33 *N.J.Super.* at 300, 110 *A*.2d 131). Thus,

> it is within the well-recognized limits of the police power for the municipality,
> acting for the common good of all, either to take over itself or to confine to a single
> person or corporation the collection, transportation through the streets, and final
> disposition of a commodity which so easily may become a nuisance.
>
> [7 Eugene McQuillin, *The Law of Municipal Corporations* § 24:247 (3d ed. rev. vol.
> 2005) (quotation marks omitted) (citing *Earruso v. Bd. of Health of E. Hanover*,
> 120 *N.J.L.* 463, 468–69, 200 *A*. 755 (1938)).]

 To that end, the government may enact such laws and
regulations as are necessary to protect the public health and
welfare from the ills of solid waste disposal. *N.J.S.A.* 40:66–1(a);
*Pleasure Bay, supra*, 66 *N.J.* at 85, 328 *A*.2d 593; *see, e.g.,
Atlantic City v. Abbott*, 73 *N.J.L.* 281, 282–83, 62 *A*. 999 (Sup.Ct.
1906) (upholding ordinance that strictly regulated "time and fre-
quency of collection," "method of conveyance," and "method and
place of final disposition" of refuse); *Twp. of Dover v. Witt*, 7
*N.J.Super.* 259, 262, 72 *A*.2d 884 (App.Div.1950) (upholding ordi-
nance confining dumping of residential trash to specifically desig-
nated and controlled area). When it chooses to provide trash
removal services as a function of its police power, the government
is bound to proceed rationally and evenhandedly.

> All that a property owner is entitled to is that the municipal action—here the
> determination to limit the municipal service to curbside collection of garbage and
> refuse—not deny him due process and the equal protection of the laws.
>
> The guaranty of due process as it applies to cases of the type here under
> consideration requires only that a law shall not be unreasonable, arbitrary or
> capricious, and that the means selected shall bear a rational relation to the
> legislative object sought to be obtained.... Similarly, the constitutional require-
> ment of equal protection is met by legislation that treats all persons within a
> class reasonably selected, in a like or similar manner.
>
> [*Pleasure Bay, supra*, 66 *N.J.* at 91, 328 *A*.2d 593 (omission in original) (quoting
> *Robson v. Rodriquez*, 26 *N.J.* 517, 522–23, 141 *A*.2d 1 (1958)).]

That is the backdrop for our inquiry.

## IV.

The earliest statute authorizing the provision of municipal gar-
bage collection was enacted in 1917. *L.* 1917, *c.* 152, art. XXIII,

§§ 1, 3, 5. It was reenacted in 1937 as *R.S.* 40:66–1, later codified as *N.J.S.A.* 40:66–1, and now provides:

> The governing body may provide for the cleaning of the streets of the municipality, and for the collection or disposal of solid waste, and may establish and operate a system therefor; purchase and operate the necessary equipment for the cleaning of streets, and for the collection or disposal of solid waste; make, amend, repeal and enforce all such ordinances, resolutions, rules and regulations as may be deemed necessary and proper for the introduction, operation and management of such system, and for the maintenance and operation of a solid waste facility . . . for the disposal of solid waste, and for the government of employees connected therewith. [*N.J.S.A.* 40:66–1(a).]

To account for its stewardship under that statute, a municipality "may, if it deem it more advantageous, contract with any person for the cleaning of the streets, or the collection or disposal of solid waste," provided it does so after adopting "specifications for the doing of the work in a sanitary and inoffensive manner." *N.J.S.A.* 40:66–4(a).

In 1974, that statutory scheme was at issue in *Pleasure Bay, supra,* where two garden apartment landlords filed actions in lieu of prerogative writs challenging the refusal of their respective municipalities to enter onto their premises and collect garbage from the dumpsters provided to the tenants for that purpose. 66 *N.J.* at 82, 328 *A.*2d 593. The landlords argued that the overall schemes of municipal trash removal, which required transporting trash to the public street for curbside collection, were ineffective relative to their complexes and denied them due process and equal protection of the laws. *Ibid.* The respective trial courts reached conflicting decisions, one finding nothing arbitrary or unreasonable about municipal provision of curbside collection, and the other declaring it " 'arbitrary and discriminatory and [in violation of] the constitutional rights of the plaintiffs.' " *Id.* at 83, 328 *A.*2d 593.

After some procedural maneuvering that need not be recounted here, we granted certification in both cases. *Id.* at 83–84, 328 *A.*2d 593. We held "that the determinations of the defendant municipalities to limit the garbage service furnished by them to curbside collection does not amount to invidious discrimination." *Id.* at 95, 328 *A.*2d 593. Citing, among other things, liability

issues, cost, and creating a potential requirement of on-premises pickup for other municipal residents, *id.* at 95–96, 328 *A*.2d 593, we reasoned that the classification resulting from those determinations was "based on real and not feigned differences in the problems inherent in collection of garbage from locations within a landowner['s] premises as contrasted with collections from the curbside," *id.* at 95, 328 *A*.2d 593.

We further noted that "it is of no legal significance that plaintiffs, because of the physical characteristics of their apartment complexes, find it impracticable to avail themselves of the curbside garbage collection services offered." *Id.* at 96–97, 328 *A*.2d 593. We therefore declined to invalidate " '[a]n otherwise valid ... ordinance conferring a privilege ... merely because it chances that particular persons find it hard or even impossible to comply with precedent conditions upon which enjoyment of the privilege is made to depend.' " *Id.* at 97, 328 *A*.2d 593 (quoting *Gant v. City of Oklahoma City,* 289 *U.S.* 98, 102–03, 53 *S.Ct.* 530, 532, 77 *L.Ed.* 1058, 1062 (1933)).

In 1991, the Legislature amended *N.J.S.A.* 40:66–1 to codify our holding in *Pleasure Bay* and to grant certain discretionary powers to municipalities that elect to provide trash-removal services to their residents. In pertinent part, that amendment prescribes:

> A municipal governing body that establishes a system for the collection or disposal of solid waste pursuant to subsection a. of this section, in its discretion, may limit service furnished by it to curbside collection along public streets or roads that have been dedicated to and accepted by the municipality. The municipal governing body may also refuse to enter upon private property to remove solid waste from dumpsters or other solid waste containers. The municipal governing body, in its sole discretion, may choose to reimburse those property owners who do not receive the municipal service, but such reimbursement shall not exceed the cost that would be incurred by the municipality in providing the collection or disposal service directly.
>
> [*N.J.S.A.* 40:66–1(b).]

In 1999, the Appellate Division had occasion to address the constitutionality of another ordinance enacted pursuant to *N.J.S.A.* 40:66–1. *WHS Realty Co., supra,* 323 *N.J.Super.* at 560, 563, 733 *A*.2d 1206. There, the municipality's trash-collection

ordinance expressly excluded "all multifamily dwellings of four or more units," which necessarily denied service to the plaintiff's garden apartment complex. *Id.* at 560, 733 *A.*2d 1206. Although acknowledging that municipalities are "not mandated to provide for municipal garbage removal," *id.* at 562, 733 *A.*2d 1206 (citing *Pleasure Bay, supra,* 66 *N.J.* at 90, 328 *A.*2d 593), the court noted that "once the service is provided . . . , 'there can be no invidious discrimination' in limiting the service to certain classifications," *id.* at 563, 733 *A.*2d 1206 (quoting *Boulevard Apartments, Inc. v. Mayor and Council of Lodi,* 110 *N.J.Super.* 406, 411, 265 *A.*2d 838 (App.Div.), *certif. denied,* 57 *N.J.* 124, 270 *A.*2d 27 (1970)). Applying that equal protection analysis, the court invalidated the municipality's disparate treatment of apartment dwellers, concluding that "the Town's garbage collection scheme bore no rational relationship to any legitimate state interest." *Id.* at 574, 733 *A.*2d 1206.

In 2001, the Legislature again amended the statute, that time to codify the ruling in *WHS Realty* and, as the sponsor statement indicated, to execute "a rational method for implementing the reasoning of the court in a fiscally prudent manner." S. 1903, 209th Leg., 1st Sess. (N.J. 2000). That amendment, which is at the core of this case, in pertinent part provides:

> a. Except as otherwise provided in subsection b. of this section, when solid waste collection services are provided to the residents of a municipality, the governing body of that municipality shall reimburse a multifamily dwelling for the actual cost to the multifamily dwelling of providing that service, but not more than the amount that the municipality would have expended on the solid waste collection services if provided by the municipality directly to the multifamily dwelling, calculated as if the dwelling units were located along public roads and streets and the service provided curbside. Alternatively, when solid waste collection services are provided to the residents of a municipality, the governing body of the municipality shall provide the solid waste collection services in the same manner as provided to the residents of the municipality who live along public roads and streets.

> b. (1) Nothing . . . shall require a municipality to operate any municipally owned or leased vehicles or other equipment, or to provide any of the services enumerated in subsection a. of this section, upon, along or in relation to any road or street in a multifamily dwelling complex which either (a) is not accepted for

dedication to public use or (b) does not meet all municipal standards and specifications for such dedication, except for width.
[*N.J.S.A.* 40:66–1.3.]

Thus, under the statute, a municipality that opts to provide garbage collection services to its residents must either provide those services "in the same manner" to multifamily dwellings or reimburse the multifamily dwellings therefor. *N.J.S.A.* 40:66–1.3(a). Further, under no circumstances is a municipality that provides curbside pickup to other municipal residents required to enter onto the private property of the multifamily dwelling to collect trash. *N.J.S.A.* 40:66–1.3(b).

## V.

What is before us is the Appellate Division's conclusion that the Borough satisfied its constitutional and statutory obligations when it chose to offer the same curbside collection services to plaintiff as it offered to all other citizens of the municipality. *Berk Cohen Assocs., supra,* 402 *N.J.Super.* at 427, 954 *A.2d* 537 (interpreting "services 'in the same manner' " as requiring provision of "the same type and frequency [ ] as provided to residents who live along public roads and streets"). Given the decisions in *Pleasure Bay* and *WHS Realty,* we are satisfied that a municipal garbage-collection scheme that requires all residents to abide by the same curbside requirements facially adheres to the guarantees of equal protection.

However, that does not insulate the scheme from other legal challenges. Indeed, even where a measure falls squarely within the authority granted by the police power and the goals sought to be achieved are legitimate ones, its application to a particular party or situation nevertheless cannot "be so arbitrary or unreasonable as to violate standards of due process of law." *Hudson Circle Servicenter, Inc. v. Town of Kearny,* 70 *N.J.* 289, 301, 359 *A.2d* 862 (1976) (citing *Hutton Park Gardens v. Town Council of W. Orange,* 68 *N.J.* 543, 560, 562–63, 350 *A.2d* 1 (1975)); *see, e.g., Hudson Circle Servicenter, supra,* 70 *N.J.* at 312, 359 *A.2d* 862 (invalidating portion of ordinance requiring plaintiff to

pave and line its parking lot because provision's benefits were "clearly outweighed by practical considerations to the contrary which are weighty enough to stamp the regulation as arbitrary"); *see also Harvard Enters., Inc. v. Bd. of Adjustment of Madison,* 56 *N.J.* 362, 368, 266 *A.2d* 588 (1970) ("[A]n ordinance that may operate reasonably in some circumstances and unreasonably in others is not void *in toto,* but is enforceable except where in the particular circumstances its operation would be unreasonable and oppressive."); *accord Pheasant Bridge Corp. v. Twp. of Warren,* 169 *N.J.* 282, 290–91, 777 *A.2d* 334 (2001), *cert. denied,* 535 *U.S.* 1077, 122 *S.Ct.* 1959, 152 *L.Ed.2d* 1020 (2002); *Bow & Arrow Manor, Inc. v. Town of W. Orange,* 63 *N.J.* 335, 343, 307 *A.2d* 563 (1973).

A strong presumption of validity accompanies munici-pal ordinances enacted pursuant to the police power. *Brown v. City of Newark,* 113 *N.J.* 565, 571, 552 *A.2d* 125 (1989) (citing *Hutton Park Gardens, supra,* 68 *N.J.* at 564, 350 *A.2d* 1). To overcome that presumption, plaintiff was required to make "a clear showing," *515 Assocs. v. City of Newark,* 132 *N.J.* 180, 186, 623 *A.2d* 1366 (1993) (citing *Hudson Circle Servicenter, supra,* 70 *N.J.* at 299, 359 *A.2d* 862), that the Borough's offer of curbside collection service instead of reimbursement lacks any " 'rational relation to the legislative object' " of protecting the public health from the dangers of accumulating refuse, *Pleasure Bay, supra,* 66 *N.J.* at 91, 328 *A.2d* 593 (quoting *Robson, supra,* 26 *N.J.* at 522, 141 *A.2d* 1).

To be sure, the arguments of plaintiff's expert and amicus that dumpster usage with on-premises trash collection is a "better" way of providing garbage collection to a garden apart-ment complex cannot vault that threshold. An ordinance is not invalid simply because it is imperfect or " 'because it could have done more to combat the evils [that] it seeks to address.' " *Quick Chek Food Stores v. Twp. of Springfield,* 83 *N.J.* 438, 451, 416 *A.2d* 840 (1980) (quoting *Hudson Circle Servicenter, supra,* 70 *N.J.* at 316, 359 *A.2d* 862); *accord In re C.V.S. Pharmacy Wayne,*

116 *N.J.* 490, 498, 561 *A.*2d 1160 (1989), *cert. denied,* 493 *U.S.* 1045, 110 *S.Ct.* 841, 107 *L.Ed.*2d 836 (1990). We do not pass on the wisdom of an ordinance; that is a matter "that is exclusively a legislative function." *Pheasant Bridge Corp., supra,* 169 *N.J.* at 290, 777 *A.*2d 334 (citing *Home Builders League of S. Jersey, Inc. v. Twp. of Berlin,* 81 *N.J.* 127, 137, 405 *A.*2d 381 (1979)).

Here, however, the trial judge, who took testimony and evaluated the credibility of witnesses, did not simply conclude that there could be wiser or better methods of trash collection than that afforded to plaintiff. Rather, she said flatly, on the basis of the evidence, that curbside pickup in plaintiff's case was "unhealthful, unsanitary, utterly inefficient, unsightly and unreasonable." We are troubled by the fact that the appellate panel ended its analysis with equal protection and failed to grapple with the implications of those findings and conclusions, which, in our view, are clearly and unequivocally related to the issue of arbitrariness, and to the question of whether the curbside scheme in this particular case is a viable option under the statute.

Indeed, the judge's findings established that the municipality's trash-collection policy in this case violated the public's health and welfare. That is what the judge was conveying when she denominated the Borough's actions as "unreasonable." As she stated, whatever waste-management measures the Borough employs, those measures must be "designed to enhance rather than undermine public safety, health and welfare," and she did not find that to be the case here.

To be sure, the judge couched her opinion in terms of equal protection. Nevertheless, her factual findings, to which we must defer, established that curbside pickup at plaintiff's complex undermined the aims that waste collection is intended to achieve. As such, plaintiff satisfied its burden of showing that the Borough's offer of curbside pickup lacked a " 'rational relation to the legislative object' " of shielding the public from the hazards associated with accumulating refuse. *Pleasure Bay, supra,* 66 *N.J.* at 91, 328 *A.*2d 593 (quoting *Robson, supra,* 26 *N.J.* at 522, 141 *A.*2d 1).

It may be that there are ways to achieve safe and sanitary curbside garbage pickup for densely populated multifamily dwellings. However, we are constrained by the record before us and, on this record, the municipal scheme did not protect the public from the dangers of accumulating refuse and, hence, "transcend[ed] the bounds of reason." *Jay Burns Baking Co. v. Bryan*, 264 *U.S.* 504, 534, 44 *S.Ct.* 412, 421, 68 *L.Ed.* 813, 836 (1924) (Brandeis, J., dissenting).

It follows that the statutory alternative of curbside pickup under *N.J.S.A.* 40:66–1.3(a) was unavailable in this case, and that the only option was the one adopted by the trial judge: to order the Borough to reimburse plaintiff for its trash-removal expenses, "calculated as if the dwelling units were located along public roads and streets and the service provided curbside." *N.J.S.A.* 40:66–1.3(a).

## VI.

The judgment of the Appellate Division is reversed, and the judgment of the Law Division is reinstated.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO and HOENS—6.

*Opposed*—None.