IN THE MATTER OF CVS PHARMACY, WAYNE: TIMOTHY
BROPHY, R.P., PHARMACIST–IN–CHARGE.

Superior Court of New Jersey
Appellate Division

Argued January 12, 1988—Decided April 28, 1988.

Before Judges SHEBELL, GAYNOR and ARNOLD M. STEIN.

*William I. Strasser* argued the cause for appellant (*Donohue, Donohue, Costenbader & Strasser,* attorneys; *William I. Strasser,* on the brief).

*Linda S. Ershow–Levenberg,* Deputy Attorney General, argued the cause for respondent State Board of Pharmacy (*W. Cary Edwards,* Attorney General, attorney; *Andrea M. Silkowitz,* Deputy Attorney General, of counsel, and *Linda S. Ershow–Levenberg,* on the brief).

The opinion of the court was delivered by

ARNOLD M. STEIN, J.S.C. (temporarily assigned).

Timothy Brophy, the resident pharmacist at the CVS Pharmacy on Hamburg Turnpike in Wayne, was found by the State Board of Pharmacy to have committed an act of grossly unprofessional conduct, in violation of *N.J.S.A.* 45:14–12f. The Board imposed a penalty of $500. We reverse and find that subsection f is unconstitutional in that it fails to satisfy due process of law requirements in two respects: it does not fulfill the purpose of serving the public health, safety or welfare, and it is void for vagueness.

We recognize our obligation to avoid constitutional issues where a case can be decided on other grounds. *Donadio v. Cunningham,* 58 *N.J.* 309, 325–326 (1971). After a thorough

review of the record, we conclude that there is no other basis upon which this appeal can be resolved.

In March 1985, CVS distributed mail circulars advertising that from Saturday, March 23 through Saturday, March 30, 1985, thirty-day supplies of all prescriptions, with certain specified exceptions, would be offered for sale at both of its Wayne stores for a flat price of $3. Thereafter, in a penalty letter dated July 15, 1985, Brophy was charged with violating *N.J. S.A.* 45:14–12f in the following manner:

Advertisement of Discounts to persons under 62 years of age, (The distribution of premiums or rebates of any kind whatever in connection with the sale of drugs and medications)—$500.00

Following a hearing, Brophy was found guilty. At the hearing, Brophy testified that he was the pharmacist-in-charge of the Hamburg Turnpike CVS store during the week of the $3 prescription offering; that the decision to run the advertisement was not made by him, but was a CVS corporate level decision; and that $3 is not the customary price for most prescriptions; in fact, for certain drugs, this price was less than the pharmacy's acquisition cost.

*N.J.S.A.* 45:14–12 provides in pertinent part that

... the following acts are hereby declared to constitute grossly unprofessional conduct for the purpose of this act:

. . . .

f. The distribution of premiums or rebates of any kind whatever in connection with the sale of drugs and medications provided, however, that trading stamps and similar devices shall not be considered to be rebates for the purposes of this chapter and provided further that discounts, premiums and rebates may be provided in connection with the sale of drugs and medications to any person who is 62 years of age or older.

*N.J.A.C.* 13:39–8.14b14 makes the pharmacist-in-charge responsible for any advertising utilized by the pharmacy.

It appears that CVS is offering up Brophy as the vehicle for making an assault upon the constitutionality of *N.J.S.A.* 45:14–12f. Our Supreme Court has expressed its distaste at this procedure of risking penal sanction rather than testing a statute under the Uniform Declaratory Judgment Act, *N.J.S.A.*

2A:16–50, *et seq.* *See State v. Baird,* 50 *N.J.* 376, 378 (1967). Undoubtedly, CVS will pay any fine or penalty imposed against Brophy in addition to providing him with legal services and absorbing the cost of legal appeals. The Board of Pharmacy has greater powers of sanction. *N.J.S.A.* 45:14–12 authorizes the Board to suspend or revoke the certification of a registered pharmacist who is guilty of grossly unprofessional conduct. There is little that CVS could do for Brophy to ameliorate the professional blemish and economic deprivation resulting from such a suspension or revocation.

We reject Brophy's argument that *N.J.S.A.* 45:14–12f prohibits only the offering of premiums or rebates on drugs and medications, and does not proscribe their sale at discount. The words "discount" and "rebate" must be read to be synonymous in the context of this statute. They both mean a deduction from a gross amount, *i.e.,* an amount deducted from a sum owing or to be paid. *Funk & Wagnall's New Comprehensive International Dictionary of the English Language, Encyclopedic Edition,* pp. 364, 1051 (1973).

*N.J.S.A.* 45:14–12f has previously withstood judicial scrutiny. In *Supermarkets Gen. Corp. v. Sills,* 93 *N.J.Super.* 326 (Ch. Div.1966), the court upheld the validity of this provision in somewhat different form. It did not then permit "discounts, premiums and rebates" to be provided in prescription drug sales to persons 62 years of age or older. This came by later amendment. See *L.* 1973, c. 125, § 1. Also, *N.J.S.A.* 45:14–12 was amended in 1977 (*L.* 1977, c. 240, § 2) to delete subsection c, which at the time of the *Supermarkets* decision included as grossly unprofessional conduct:

> The promotion, direct or indirect, by any means, in any form and through any media of the prices for prescription drugs and narcotics or fees or for services relating thereto or any reference to the price of said drugs or prescriptions whether specifically or as a percentile of prevailing prices or by the use of the terms "cut rate," "discount," "bargain" or terms of similar connotation; ...

This deletion was in response to a decision by the United States Supreme Court declaring unconstitutional state laws

totally prohibiting advertising of drug prices. Such blanket prohibition was deemed to be an unconstitutional intrusion upon commercial speech in violation of the first amendment of the United States Constitution. *Virginia Board of Pharmacy v. Virginia Citizens' Council,* 425 *U.S.* 748, 96 *S.Ct.* 1817, 48 *L.Ed.*2d 346 (1979).

This same amendment, deleting subsection c, added a new subsection g to this statute, making as an additional ground of grossly unprofessional conduct by a pharmacist:

> g. Advertising of prescription drug prices in a manner inconsistent with rules and regulations promulgated by the Director of the Division of Consumer Affairs; provided, however, no such advertising of any drug or substance shall be authorized unless the Commissioner of Health shall have determined that such advertising is not harmful to public health, safety and welfare.

More recently, in *Pharmacy, Board of,* 191 *N.J.Super.* 7, 9–10 (App.Div.1983), certif. den. 95 *N.J.* 189 (1983), app. dism. *sub. nom. CVS v. Bd. of Pharmacy,* 465 *U.S.* 1095, 104 *S.Ct.* 1583, 80 *L.Ed.*2d 117 (1985), we upheld the constitutionality of subsection f in dismissing an appeal from a ruling of the State Board of Pharmacy that coupon advertising was in violation of the prohibition against the issuance of rebates. We rejected the argument that the ban on rebates offends free speech rights under the First Amendment.

We recognize that this statutory provision is entitled to a presumption of validity. *Reingold v. Harper,* 6 N.J. 182, 194 (1951). At the same time, the statute must bear some relationship between the public health, safety or welfare and the legislative objective sought to be obtained—here, the banning of practices which would tend to lower standards of professional service by a pharmacist. *Abelson's, Inc. v. New Jersey State Board of Optometrists,* 5 *N.J.* 412, 418–421 (1950); *Supermarkets Gen. Corp. v. Sills,* 93 *N.J.Super.* at 338. Analysis of this statutory provision makes that relationship so gossamer as to be almost if not completely invisible.

The State argues, as it did successfully in *Supermarkets,* 93 *N.J.Super.* at 340–341, that the prohibition against

rebates and premiums discourages patients from shopping around from one pharmacy to another for the best prescription price. It is said that this will tend to keep the patient anchored to one pharmacy, promoting greater opportunity to monitor the patient's prescription purchases and thereby lessening the potential for the dispensing of antagonistic drugs in different prescriptions ordered by the same or different physicians.

We question the validity of a statute which purports to perpetuate a sort of "marriage" between customer and pharmacist. For reasons that are beyond the scope of this opinion, we doubt that the State could mandate such a binding relationship by direct legislation. We have difficulty perceiving how the State can do by indirection what it is prohibited from doing by direct legislation. *Werner Machine Co. v. Director of Div. of Taxation,* 31 *N.J.Super.* 444, 449 (App.Div.1954), aff'd. 17 *N.J.* 121 (1954). However, even if this were a valid public purpose, it is not served by a statute which prohibits the distribution of "premiums or rebates of any kind whatsoever in connection with the sale of drugs and medications," and which at the same time provides "that trading stamps and other similar devices shall not be considered rebates...." With no limitation on the quantity or value of trading stamps "or other similar devices" which could be offered a consumer in connection with the sale of prescription medication, the attempt to regulate price becomes meaningless. Enough trading stamps or similar devices could be provided the consumer as to make the "sale" of the prescription a virtual gift.

Further, as we previously noted, since 1973 "discounts, premiums and rebates may be provided in connection with the sale of drugs and medications to any person who is 62 years of age or older." If the statutory purpose of this subsection is to make more effective the pharmacist's duty to monitor prescriptions (*N.J.S.A.* 45:14–15; *Supermarkets,* 93 *N.J.Super.* at 341), that purpose appears thwarted by a provision which exempts from the discount-premium-rebate ban a significant group of our population, a group which is most in need of protection

against the danger of receiving antagonistic prescription medications. The older a person becomes, the more likely the need for prescription drugs. The more prescription drugs prescribed, the greater the need for protection from the administration and receipt of conflicting drugs. Yet, under this statute, older persons may shop for less expensive drugs, while younger persons may not.

The problem of prescription monitoring is already effectively dealt with by statute and regulation. *N.J.S.A.* 45:14–15 requires the pharmacist to retain the original written prescription as well as a record of the drug dispensed, and the person to whom it is dispensed, accompanied by an identification number. *N.J.A.C.* 13:39–9.13 requires the pharmacist to maintain a patient profile record system for each patient serviced by the pharmacist. This patient profile must include the patient's family name, address, age group, name of prescriber, the drug quantity and strength dispensed, and must also "attempt to ascertain and shall record any allergies and idiosyncrasies of the patient and any chronic conditions which may relate to drug utilization as communicated to the pharmacy by the patient." *N.J.A.C.* 13:39–9.13(c). This regulation has been in effect since 1973, subsequent, of course, to the decision in *Supermarkets.*

*N.J.S.A.* 45:14–12f is fatally flawed in another respect: it is void for vagueness. There is no baseline price from which a pharmacist can be charged with providing a discount in connection with the sale of a prescription drug. Put another way, there is no fixed or otherwise identifiable price from which the discount is to be calculated. This provision is so indefinite and uncertain as to be void for want of due process. It is not sufficiently explicit to inform those subjected to action thereunder as to the conduct which will render them liable to its penalties. *Abelson's, Inc. v. N.J. State Board of Optometrists, supra,* 5 *N.J.* at 424.

For the reasons expressed herein, the final decision of the State Board of Pharmacy, finding Timothy Brophy guilty of

grossly unprofessional conduct as a pharmacist, in violation of *N.J.S.A.* 45:14–12f, is reversed, and the penalty of $500 imposed pursuant to such order is vacated.