IN THE MATTER OF C.V.S. PHARMACY WAYNE, TIMOTHY BROPHY, R.P. PHARMACIST-IN-CHARGE.

Argued March 14, 1989—Decided August 14, 1989.

Sandra Y. Dick, Deputy Attorney General, argued the cause for appellant, State Board of Pharmacy (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*William I. Strasser* argued the cause for respondent, Timothy Brophy (*Donohue, Donohue, Costenbader & Strasser,* attorneys; *William I. Strasser* and *Frank Covello,* on the briefs).

*Gordon J. Golum* submitted a brief on behalf of amicus curiae New Jersey Pharmaceutical Association (*Wilentz, Goldman & Spitzer,* attorneys).

*Richard B. McGlynn* submitted a brief on behalf of amicus curiae New Jersey Council of Chain Drug Stores (*Stryker, Tams & Dill,* attorneys; *Richard B. McGlynn, Mark L. Mucci,* and *Stephen B. Genzer,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The sole issue on this appeal is the constitutionality of *N.J.S.A.* 45:14–12, which provides that it is "grossly unprofessional conduct" for a pharmacist to offer discounts or rebates on the sale of drugs or medication. The Appellate Division found the statute unconstitutional, holding that it did not promote the public health, safety, or welfare, and that it was void for vagueness. 224 *N.J.Super.* 631 (1988). Because the matter involved a substantial constitutional question, the State Board of Pharmacy (Board) appealed as of right. *R.* 2:2–1(a). We reverse.

-I-

In March 1985, Consumer Value Stores (CVS), a chain of retail pharmacies operating in New Jersey, distributed mail circulars for its stores in Wayne, New Jersey, advertising a special one-week $3.00 price for the vast majority of its prescription drugs. The advertisement read: "Prescription Savings. This price valid at both CVS Pharmacy Wayne stores only. All prescriptions $3.00, Saturday, March 23 through Saturday March 30, 1985." For most drugs, the advertised price was less than the regular price for the drugs; in many instances, the price was less than the cost to CVS.

The Board subsequently issued a penalty letter to respondent, Timothy Brophy, the resident pharmacist of a CVS drug store in Wayne, charging him with violating *N.J.S.A.* 45:14–12f. The statute provides that it is "grossly unprofessional conduct" for a pharmacist to engage in

> [t]he distribution of premiums or rebates of any kind whatever in connection with the sale of drugs and medications provided, however, that trading stamps and similar devices shall not be considered to be rebates for the purposes of this chapter and provided further that discounts, premiums and rebates may be provided in connection with the sale of drugs and medications to any person who is 62 years of age or older.

Here, the decision to advertise the discounted prices had been made not by respondent but by the CVS corporate management. As the pharmacist in charge, however, respondent was responsible for any advertising by the pharmacy. *N.J.A.C.* 13:39–8.14b14.

After an administrative hearing, the Board found respondent guilty and fined him $500. In reversing, the Appellate Division found both that a discount was tantamount to a prohibitive rebate and that the statute was not reasonably related to the promotion of the public interest. The court rejected the Board's contention that the statute protected the health, safety, and welfare by discouraging the public from buying drugs at different pharmacies, a practice that the Board contended would prevent monitoring drug use by individual customers.

*See Supermarkets Gen. Corp. v. Sills,* 93 *N.J.Super.* 326 (Ch.Div.1966). The court stated:

> We question the validity of a statute which purports to perpetuate a sort of "marriage" between customer and pharmacist. For reasons that are beyond the scope of this opinion, we doubt that the State could mandate such a binding relationship by direct legislation. We have difficulty perceiving how the State can do by indirection what it is prohibited from doing by direct legislation. *Werner Machine Co. v. Director of Div. of Taxation,* 31 *N.J.Super.* 444, 449 (App.Div.1954), *aff'd,* 17 *N.J.* 121 (1954). However, even if this were a valid public purpose, it is not served by a statute which prohibits the distribution of "premiums or rebates of any kind whatsoever in connection with the sale of drugs and medications," and which at the same time provides "that trading stamps and other similar devices shall not be considered rebates * * *." With no limitation on the quantity or value of trading stamps "or other similar devices" which could be offered a consumer in connection with the sale of prescription medication, the attempt to regulate price becomes meaningless. Enough trading stamps or similar devices could be provided the consumer as to make the "sale" of the prescription a virtual gift. [224 *N.J.Super.* at 636.]

According to the court, the irrationality of the statute was exacerbated by the exception for persons age sixty-two and over, a group that uses a disproportionate amount of prescription drugs and should, therefore, be most in need of protection. Additionally, the court found that other requirements obligated pharmacists to maintain records of drugs dispensed to patients and "to determine any harmful drug interaction, reaction, or misutilization of the prescription." *N.J.A.C.* 13:39-9.13(c).

Finally, the court concluded that the statute was vague, reasoning:

> There is no baseline price from which a pharmacist can be charged with providing a discount in connection with the sale of a prescription drug. Put another way, there is no fixed or otherwise identifiable price from which the discount is to be calculated. This provision is so indefinite and uncertain as to be void for want of due process. It is not sufficiently explicit to inform those subjected to action thereunder as to the conduct which will render them liable to its penalties. [224 *N.J.Super.* at 637 (citation omitted)]

-II-

In recent years, as local drug stores and large chains have battled in the marketplace, the Legislature and the Board have sought to maintain the quality of pharmaceutical services. One device for protecting public health is the requirement that

pharmacists keep records of drugs purchased by patients through a "patient profile." *N.J.S.A.* 45:14–15; *N.J.A.C.* 13:39–13(c). The underlying thought is that by recourse to the patient profile, a pharmacist can prevent a customer from taking incompatible drugs.

For several years, CVS and respondent have vigorously challenged the statute on various grounds. While the present matter was pending before the Board, respondent challenged the statute in the United States District Court for the District of New Jersey, asserting that it unconstitutionally restricted his freedom of speech. The District Court dismissed that action in reliance on *In re Board of Pharmacy,* 191 *N.J.Super.* 7 (App.Div.1983). In that case, in which CVS was directly involved as a party, the Appellate Division found both that the statute did not constitute an infringement on its freedom of speech and that it was a proper exercise of the police power as a means of preventing unfair competition and unfair sales practices. After this Court denied certification, 95 *N.J.* 189 (1983), the United States Supreme Court dismissed the appeal, *CVS v. Board of Pharmacy,* 465 *U.S.* 1095, 104 *S.Ct.* 1583, 80 *L.Ed.*2d 117 (1980). This indicated to the District Court judge in respondent's action that the United States Supreme Court had concluded either that CVS's appeal did not present a substantial federal question or that the state courts had correctly decided the issue. Finding it to be irrelevant that CVS was involved in one matter and respondent in the other, the District Court dismissed respondent's suit.

In the present case, the Board believes that the legislative purpose behind *N.J.S.A.* 45:14–12 will be defeated by pricing practices that encourage customers to buy drugs at whatever pharmacy happens to be selling them at the cheapest price that week. CVS, however, believes a one-week price reduction is in not only its interest, but also that of the public. Deprecating the goal of patient monitoring, CVS points to the fact that the statute permits the offer of discount prices to senior citizens. To this, the Board rejoins that the Legislature may respond to

the needs of different segments of the public in various ways. The Board also points out that the Legislature has tried to help people over the age of sixty-two by providing State funds to limit the cost of prescription drugs through the Pharmaceutical Assistance to the Aged program (PAA program), *N.J.S.A.* 30:4D–25. According to the Board, the Legislature may recognize, as it has recognized in the PAA program, that for senior citizens, cost is the dispositive concern. For the general population, the Legislature could decide that patient monitoring is the dominant consideration. The Board also maintains that the statute prevents price wars that would reduce the number of pharmacies and adversely affect pharmaceutical services and professional standards. Our analysis proceeds in light of the constant, albeit sometimes conflicting, goals of the Legislature and Board to maintain the quality of pharmaceutical services in a changing market.

Respondent's primary argument is that the statute violates the principle of substantive due process under the federal and State constitutions. We begin our review of that contention by recognizing the presumption of validity that attaches to every statute. *Piscataway Township Bd. of Educ. v. Caffiero*, 86 *N.J.* 308, 318, *appeal dismissed*, 454 *U.S.* 1025, 102 *S.Ct.* 560, 70 *L.Ed.*2d 470 (1981); *Fried v. Kervick*, 34 *N.J.* 68, 74 (1961). The presumption is particularly daunting when a statute attempts to protect the public health, safety, or welfare. *Nebbia v. New York*, 291 *U.S.* 502, 54 *S.Ct.* 505, 78 *L.Ed.* 940 (1934). We have consistently sustained such legislation if it "is not arbitrary, capricious, or unreasonable, and the means selected bear a rational relationship to the legislative objective." *Brown v. City of Newark*, 113 *N.J.* 565, 572 (1989); *see Joseph H. Reinfeld, Inc. v. Schieffelin & Co.*, 94 *N.J.* 400, 413 (1983); *Piscataway Township Bd. of Educ., supra*, 86 *N.J.* at 318; *Robson v. Rodriguez*, 26 *N.J.* 517, 522 (1958). The presumed validity of price-control statutes, such as the present one, can be overcome only "by proofs that preclude the possibility that there could have been any set of facts known to the legislative

body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest." *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 565 (1975); *see also Fried, supra,* 34 *N.J.* at 83 (upholding a ban on gas rebates). Even if a court cannot ascertain the actual purpose of the statute, it should sustain the statute if it has any conceivable rational purpose. *Williamson v. Lee Optical of Okla.,* 348 *U.S.* 483, 487–88, 75 *S.Ct.* 461, 464–65, 99 *L.Ed.* 563, 571–75, *reh'g denied,* 349 *U.S.* 925, 75 *S.Ct.* 657, 99 *L.Ed.* 1256 (1955); *Kotch v. Board of River Port Pilot Comm'rs,* 330 *U.S.* 552, 67 *S.Ct.* 910, 91 *L.Ed.* 1093, *reh'g denied,* 331 *U.S.* 864, 67 *S.Ct.* 1196, 91 *L.Ed.* 1869 (1947); *United States v. Carolene Prods.,* 304 *U.S.* 144, 152–54, 58 *S.Ct.* 778, 783–85, 82 *L.Ed.* 1234, 1241–43 (1938); *see also* J. Nowak, R. Rotunda, J. Young, *Constitutional Law* 446 (2d ed. 1983) ("The *Williamson* opinion suggests that the Court will not only presume that a legislature had a reasonable basis for enacting a particular economic measure, but also will hypothesize reasons for the law's enactment if the legislature fails to state explicitly the reasons behind its judgment. Consequently, anyone attempting to argue for the invalidation of a legislative economic enactment may have to discredit the Court's conceived reasons for the legislature's actions as well as the arguments for those who support the measure."). The judicial task is not to question the wisdom of the legislative decision but to ascertain whether the statute is rationally related to the public health, safety, or welfare. *Brown, supra,* 113 *N.J.* at 571. Similarly, courts should approve the means selected by the Legislature to achieve its purposes unless those means are so irrelevant as to be irrational. *Pennell v. San Jose,* 485 *U.S.* 1, ——, 108 *S.Ct.* 849, 857, 99 *L.Ed.*2d 1, 14 (1988); *Vance v. Bradley,* 440 *U.S.* 93, 97, 99 *S.Ct.* 939, 942–43, 59 *L.Ed.*2d 171, 176 (1979).

For a statute to be rationally related to the public interest, it need not be the best or only method of achieving the legislative purpose. So viewed, we cannot say that *N.J.S.A.*

45:14–12 is an irrational response to the goal of patient monitoring. Given the deference we are obliged to accord to an act of the Legislature, we likewise conclude that body could have determined that the statute is an effective means of preventing destructive price wars that could adversely affect pharmaceutical services and professional standards.

In finding the statute to be irrational, the Appellate Division reasoned that two exemptions undermined the legislative purpose. *Supra* at 495. The first exemption allows the use of trading stamps, and the second is for persons who attain the age of sixty-two. The mere fact that the statute is a partial solution, however, does not mean that it is unconstitutional. A statute enacted in the public interest remains rational although it fails to protect everyone. *City of New Orleans v. Dukes*, 427 *U.S.* 297, 303, 96 *S.Ct.* 2513, 2517, 49 *L.Ed.*2d 511, 517 (1976); *Williamson, supra*, 348 *U.S.* at 489, 75 *S.Ct.* at 465, 99 *L.Ed.* at 573. In brief, the Legislature may proceed one step at a time. It may, therefore, both permit the use of trading stamps and prohibit the offer of rebates and premiums.

Furthermore, we reject the Appellate Division's speculation that the prohibition on premiums and rebates could be undermined by the issuance of trading stamps, a practice expressly permitted by the statute. 224 *N.J.Super.* at 636. That notion, raised by the court on its own, is unsupported by any proof in the record that pharmacies use trading stamps to circumvent the statute. Without an adequate showing, we are reluctant to invalidate the statute for that reason.

We also find the exemption for senior citizens to be a reasonable legislative response to economic pressure on the elderly. To some extent, moreover, the effect of the exemption on senior citizens is diluted because of the PAA program, under which those citizens can purchase drugs by making a $2.00 co-payment. According to the Department of Human Services, 246,693 senior citizens were eligible for the program in fiscal year 1988. *Division of Medical Assistance and Health Servs.*,

*Dep't of Human Servs., Pharmaceutical Assistance to the Aged and Disabled Annual Report* 6 (1988). Because their co-payment is limited to $2.00, discounts for them are unnecessary.

■ Nor do we find that the statute is an unwarranted exercise in economic protectionism. Nothing in the record suggests that the statute puts any particular group at a competitive disadvantage. *See Lane Distribs., Inc. v. Tilton,* 7 *N.J.* 349 (1951) (tax classifications struck down when their sole purpose was to prevent small retailers from competing with large retailers). Even if the Legislature was moved in part by a desire to accord some degree of economic protection to individual pharmacists, that purpose need not invalidate an otherwise valid statute. As long as the statute has one valid purpose, we are obliged to sustain it. *Brown, supra,* 113 *N.J.* at 584; *Riggs v. Township of Long Beach,* 109 *N.J.* 601, 613 (1988).

We find to be irrelevant respondent's contention that the objectives of *N.J.S.A.* 45:14–12 are undermined by legislative encouragement to use generic drugs and to advertise prescription drug prices. *N.J.S.A.* 24:6E–1 to –13. Nothing in the record would justify the conclusion that the obligation to inform a customer of generic drugs prevents patient monitoring or promotes price wars. The customer who is offered the option of purchasing generic drugs still deals with the same pharmacist. That pharmacist merely offers a lower-priced alternative within his or her drug store. Price advertising simply informs a consumer of the price for prescriptions at a specific pharmacy. Neither practice presents the same threat to the maintenance of a patient profile as short-term price cuts.

■ Furthermore, we do not find the statute to be void for vagueness. The doctrine of vagueness, which is grounded in the concept of fairness, requires that a law be sufficiently clear to apprise an ordinary person of its reach. *Brown, supra,* 113 *N.J.* at 577; *State v. Lee,* 96 *N.J.* 156, 165–66 (1984); *Town*

*Tobacconist v. Kimmelman,* 94 *N.J.* 85, 125 (1983). A statute may be vague facially if "there is no conduct that it proscribes with sufficient certainty," or it may be vague as applied. *State v. Cameron,* 100 *N.J.* 586, 593 (1985). Here, Brophy argues that the statute is vague as applied because it fails to define the words "discount," "rebate," "premium," or "trading stamps." As the Appellate Division pointed out, however, the statute expressly prohibits the offering of rebates. The words "discount" and "rebates" "both mean a deduction from a gross amount, *i.e.,* an amount deducted from a sum owing or to be paid." 224 *N.J.Super.* at 634 (citation omitted). Giving the statutory language its ordinary meaning, see *Renz v. Penn Cent. Corp.,* 87 *N.J.* 437, 440 (1981), we are unpersuaded that an ordinary pharmacist could not understand that it was a discount to reduce prices one week and raise them the next. Nor do we find that the statute is unconstitutionally vague because it failed to provide a baseline price for the calculation of a discount. Whatever relevance that argument might have in some other context, it does not apply when the pharmacy's own prices provide all that need be known to uncover the discount.

 We find no merit in respondent's argument that the senior citizen exemption violates the equal protection rights of citizens under age sixty-two. Generally speaking, federal equal protection analysis employs a three-tier system based on the affected interest. As we have stated,

[a] statute that regulates a "fundamental right" or a "suspect class" is subject to "strict scrutiny." To withstand strict scrutiny, the statute must further a compelling state interest and there must be no less restrictive means of accomplishing that objective. If a statute regulates a "semi-suspect" class or substantially affects a fundamental right in an indirect manner, it will be examined under an "intermediate scrutiny." To withstand intermediate scrutiny the classification must serve an important governmental objective and must be substantially related to the achievement of those objectives. If neither strict nor intermediate scrutiny applies, the statute will be subjected to a "rational basis" test. To withstand this level of review, the statute must be rationally related to the achievement of a legitimate state interest. [*Barone v. Department of Human Servs.,* 107 *N.J.* 355, 364–65 (1987) (citations omitted).]

Persons under age sixty-two are not members of a suspect or semi-suspect class, and there is no constitutional right to purchase drugs at a discount. Hence, the appropriate standard of review is the rational-basis test. As previously explained, *supra* at 498, the statute is rationally related to the legislative goals of patient monitoring and the maintenance of pharmaceutical services and professional standards. Consequently, we conclude that the statute passes federal equal protection analysis.

We are similarly unpersuaded by respondent's equal protection analysis under article 1, paragraph 1 of the New Jersey Constitution. In analyzing rights under the State Constitution, we balance "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." *Greenberg v. Kimmelman*, 99 *N.J.* 552, 567 (1985). Here, the asserted right is that of a person under age sixty-two to purchase drugs at a discount. No matter how appealing that right may be to consumers, it does not rise to a constitutional level. Furthermore, the statute restricts the ability to purchase prescriptions only to the extent of preventing discounts, manifested here by sharp reductions for one week. According to the Board, the public needs the restriction for pharmacists to monitor the use of prescription drugs by their customers. So viewed, we cannot find that the statute violates the equal protection principles of the State Constitution.

In drawing distinctions, the Legislature need not proceed with mathematical precision. *Paul Kimball Hosp., Inc. v. Brick Township Hosp.*, 86 *N.J.* 429, 446–47 (1981). As long as the legislative classification is rational, it is irrelevant that it is not the wisest or the fairest alternative, or one we might choose. So viewed, we find that the Legislature could distinguish between people over and under age sixty-two. *Barone, supra,* 107 *N.J.* at 370. The statute not only prevents people under sixty-two from shifting from pharmacy to pharmacy, but

also prevents potentially destructive price wars that could erode the integrity of pharmaceutical services.

 Finally, we turn to the argument, raised for the first time on appeal, that the Board should have proceeded by rulemaking rather than by adjudication. Brophy argues that before instituting the present proceedings, the Board should have promulgated regulations concerning discounts and rebates. We disagree. Administrative agencies have wide discretion in selecting the means to fulfill their delegated duties. The choice of proceedings generally rests within the discretion of the agency. "Courts normally defer to that choice so long as the selection is responsive to the purpose and function of the agency." *Texter v. Department of Human Servs.*, 88 *N.J.* 376, 383, 386 (1982); *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n*, 85 *N.J.* 325, 338, *appeal dismissed*, 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d 74 (1981).

In most cases when we have required rulemaking as a condition precedent to adjudication, the agency had acted without express statutory authority in a previously unregulated area. *State, Dep't of Envtl. Protection v. Stavola*, 103 *N.J.* 425 (1986) (rulemaking required when agency tried to regulate beach-front cabanas for the first time without express statutory authority); *Metromedia, Inc. v. Director, Div. of Taxation*, 97 *N.J.* 313, 331–32 (1984) (new tax method had to be preceded by rulemaking when no explicit statutory authority); *Crema v. New Jersey Dep't of Envtl. Protection*, 94 *N.J.* 286 (1983) (implied authority to engage in conceptual approval of projects required rulemaking before this authority could be exercised). Here, however, the Legislature has proscribed the prohibited conduct. In this context, the administrative agency need not adopt regulations before carrying out its legislative mission. The agency could proceed, as the Board proceeded, to enforce the statute through adjudication. *Airwork Serv. Div. v. Director, Div. of Taxation*, 97 *N.J.* 290 (1984), *cert. denied*, 471

504

U.S. 1127, 105 *S.Ct.* 2662, 86 *L.Ed.*2d 278 (1985); *Mayflower Sec. v. Bureau of Sec.*, 64 *N.J.* 85 (1973).

The judgment of the Appellate Division is reversed, and the fine imposed by the Board is reinstated.

*For reversal and reinstatement*—

Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—6.

*For affirmance*—none.