SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. David L. Smith (A-4-21) (085635)**

**Argued April 26, 2022 -- Decided June 28, 2022**

**SOLOMON, J., writing for a unanimous Court.**

N.J.S.A. 39:3-74 prohibits operation of a vehicle with any "non-transparent material" on the front windshield or front side windows. Although the statute predates automotive window tinting, it commonly serves as the statutory basis for tinted window citations. In this appeal, the Court considers whether a purported violation of N.J.S.A. 39:3-74 based on tinted windows justified an investigatory stop of a motor vehicle.

In November 2018, at approximately 10:20 p.m., Trenton detectives stopped defendant David Smith's motor vehicle for a purported tinted windows violation after the detectives observed dark tinting on defendant's rear windshield. Despite the rear windshield's tint, detectives were able to see that defendant was alone in the car and was making a furtive "shoving" motion, raising suspicions that he was trying to conceal a weapon. When the detectives searched the vehicle, they found a firearm. The detectives cited defendant for a tinted windows violation and charged him with various weapons offenses.

The trial court denied defendant's motion to suppress the firearm, concluding that the car stop was supported by a reasonable suspicion of a tinted windows violation pursuant to adjacent statute N.J.S.A. 39:3-75. Defendant subsequently pled guilty to second-degree unlawful possession of a handgun. The Appellate Division affirmed the denial of defendant's motion to suppress.

The Court granted certification, limited to whether the State established a reasonable and articulable suspicion for the car stop. 248 N.J. 386 (2021). The Court later granted the State's motion for a limited remand to the trial court to vacate defendant's convictions and dismiss the charges against him. Despite the stipulation of dismissal, the Court considers the issues presented by this appeal because they are of sufficient public importance and likely to surface again.

**HELD:** The stop was not supported by a reasonable and articulable suspicion of a motor vehicle violation. N.J.S.A. 39:3-75, which governs automotive safety glass,

1

does not apply to window tint violations. Consistent with the plain language of N.J.S.A. 39:3-74, reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car.

1. A motor vehicle stop by a police officer is a seizure of persons under both the Federal and State Constitutions. To justify such a seizure, a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense. Defendant was cited for a tinted windows violation pursuant to N.J.S.A. 39:3-74, which provides in pertinent part that "[n]o person shall drive any motor vehicle with any . . . non-transparent material upon the front windshield, . . . or front side windows of such vehicle." (emphases added). Here, the arresting officers observed window tint only on the rear windshield of defendant's vehicle. Under the statute's plain language, the tint on defendant's rear windshield could not constitute a violation of N.J.S.A. 39:3-74. It did not give rise to the reasonable and articulable suspicion necessary to justify this motor vehicle stop. (pp. 10-14)

2. The Court considers the other authorities and principles on which the State and the trial and appellate courts relied. N.J.S.A. 39:3-75 prohibits the use of "safety glazing material which causes undue or unsafe distortion of visibility or . . . unduly fractured, discolored or deteriorated safety glazing material" on any of a vehicle's windows. The plain language of section 75 indicates that it is concerned solely with the quality and maintenance of safety glazing material, not aftermarket tinted window film. N.J.S.A. 39:3-75.1 provides an exception to window tinting restrictions for medical reasons not claimed here. N.J.S.A. 39:3-75.2 authorizes the promulgation of rules and regulations specifying standards for permissible window tint but does not itself establish such specifications. In short, no statute supports the stop at issue. (pp. 14-16)

3. Related regulations are equally inapposite. In State v. Cohen, the Appellate Division construed N.J.S.A. 39:3-74 as prohibiting tinted windows that do not meet N.J.A.C. 13:20-33.7's delineated window tint specifications. 347 N.J. Super. 375, 380 (App. Div. 2002). Through 2013, all motor vehicles had to comply with N.J.A.C. 13:20-33.7's safety requirements to pass biannual inspection. N.J.A.C. 13:20-33.7 contains two paragraphs -- (d) and (g) -- that set forth standards for tinted windows, but neither justifies the stop here. N.J.A.C. 13:20-33.7(d) prohibits the addition of any tint to areas not relevant here. N.J.A.C. 13:20-33.7(g) addresses rear windows and windshields -- but the statute authorizes the application of tint to those surfaces so long as the car has an exterior wing mirror on each side and vision through the windows and windshields is only partially obscured. Even if N.J.A.C. 13:20-33.7 did prohibit the tint observed on defendant's rear windshield, the regulation no longer applies to non-commercial vehicles. The Court departs from

2

Cohen to the extent that it ties violations of N.J.S.A. 39:3-74 to the standards set forth in N.J.A.C. 13:20-33.7. N.J.A.C. 13:20-1.2(a) is likewise inapplicable because its light transmittance standard applies only to a vehicle's front windshield where a Medical Exemption Certificate has been issued. (pp. 16-17)

4. The facts of this case do not support application of the community caretaking function, which may be implicated where police observe "something abnormal . . . concerning the operation of a motor vehicle." Cohen, 347 N.J. Super. at 378. Unlike the darkly tinted front driver- and passenger-side windows that prompted the investigatory stop in Cohen, defendant's tinted rear windshield could not be considered a "significant obstruction" of the driver's vision or "a hazardous vehicular condition that deviates from the norm," see id. at 381, because, whether or not defendant's car was equipped with exterior side mirrors, New Jersey law allows for rear window tinting on passenger vehicles. Furthermore, detectives were able to see through the rear windshield that there was "just the driver" making furtive motions inside the car. The initial stop of defendant's vehicle was thus unconstitutional because no statutory or regulatory provision forms the basis for a reasonable and articulable suspicion that defendant committed a tinted windows violation. (pp. 17-18)

5. For completeness and future guidance, the Court considers whether N.J.S.A. 39:3-74 is unconstitutionally vague. A statute is unconstitutionally vague, in violation of due process, if persons of common intelligence must necessarily guess at its meaning and differ as to its application. The term "non-transparent" used in N.J.S.A. 39:3-74 is not impermissibly vague and means that reasonable suspicion of a tinted windows violation arises when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car. Here, despite the tinting on defendant's rear windshield, detectives were able to see with just the police SUV's headlights and street lighting that there was only one person in the vehicle and that the person was making movements. Such a degree of window tint is not "non-transparent" within the meaning of the statute. In order to establish a reasonable suspicion of a tinted windows violation under N.J.S.A. 39:3-74, the State will therefore need to present evidence that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside. (pp. 18-22)

**REVERSED.**

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE SOLOMON's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-4 September Term 2021
### 085635

State of New Jersey,

Plaintiff-Respondent,

v.

David L. Smith, a/k/a Mont,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| April 26, 2022 | June 28, 2022 |

Margaret McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret McLane, of counsel and on the briefs).

William P. Cooper-Daub, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; William P. Cooper-Daub, of counsel and on the briefs, and Randolph E. Mershon, III, Assistant Mercer County Prosecutor, on the briefs).

Karen Thompson argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Karen Thompson, Alexander Shalom, and Jeanne LoCicero, on the brief).

1

Jonathan Romberg submitted a brief on behalf of amicus curiae Seton Hall University School of Law Center for Social Justice (Seton Hall University School of Law Center for Social Justice, attorneys; Jonathan Romberg, of counsel and on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

N.J.S.A. 39:3-74 prohibits operation of a vehicle with any "non-transparent material" on the front windshield or front side windows. Although the statute predates automotive window tinting, it commonly serves as the statutory basis for tinted window citations. See State v. Cohen, 347 N.J. Super. 375, 379-81 (App. Div. 2002). In this appeal, the Court considers whether a purported violation of N.J.S.A. 39:3-74 based on tinted windows justified an investigatory stop of a motor vehicle.

Trenton detectives stopped defendant David Smith's motor vehicle for a purported tinted windows violation after the detectives observed dark tinting on defendant's rear windshield. Despite the rear windshield's tint, the detectives were able to see that defendant was alone in the car and was making a furtive "shoving" motion, raising suspicions that he was trying to conceal a weapon. When the detectives searched the vehicle, they found a firearm. The detectives cited defendant for a tinted windows violation and charged him with various weapons offenses. Defendant moved to suppress the firearm, arguing

that the motor vehicle stop was unlawful because the detectives could not have had a reasonable and articulable suspicion that the tinting on defendant's rear windshield violated N.J.S.A. 39:3-74.

The trial court denied defendant's motion, concluding that the car stop was supported by a reasonable suspicion of a tinted windows violation pursuant to adjacent statute N.J.S.A. 39:3-75. Defendant subsequently pled guilty to second-degree unlawful possession of a handgun pursuant to a plea agreement with the State and was sentenced in accordance with the State's recommendation. The Appellate Division later affirmed the denial of defendant's motion to suppress.

We now reverse the Appellate Division's judgment. We hold that the stop was not supported by a reasonable and articulable suspicion of a motor vehicle violation.[1] We further hold that N.J.S.A. 39:3-75, which governs automotive safety glass, does not apply to window tint violations. Finally, consistent with the plain language of N.J.S.A. 39:3-74, we hold that reasonable and articulable suspicion of a tinted windows violation arises only when a

---

[1] This issue is now moot because, following this Court's grant of certification, the State moved for a limited remand to vacate defendant's convictions and dismiss the charges against him. Despite the stipulation of dismissal, we decided to maintain the appeal because the issue presented is "of sufficient public importance, likely to surface again, to warrant our deciding it, even in the absence of an actual controversy between the litigants." State v. Kovack, 91 N.J. 476, 486 (1982).

vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car.

## I.

### A.

The record before the motion judge reveals that in November 2018, at approximately 10:20 p.m., four detectives were patrolling in a marked Trenton Police SUV. All four detectives were assigned to the Street Crimes Unit, which Detective Brieer Doggett described as being focused on "more proactive policing" aimed at "apprehend[ing] individuals . . . in regards to narcotic, weapons, and other related offenses." Doggett, who was riding in the front passenger seat, later characterized their location as a "high drug area" and a "high weapons-related offenses area."

As the detectives approached an intersection with a red traffic light, they pulled up behind a Ford Taurus with its left turn signal activated. The Taurus was "[d]irectly in front of" them, and Doggett observed that "the windows were tinted on the vehicle." When the light turned green, the Taurus proceeded slowly, turning left at the intersection. The detectives then "activated [their] emergency lights and sirens . . . [b]ecause the vehicle had tinted windows." Detective Doggett later testified that he was close enough to see that the vehicle's rear windshield was tinted. Notwithstanding the tinted

4

windows, with the police SUV's headlights and the lighting on the street Doggett was able to see that there was "just the driver" inside the car.

The driver of the Taurus initially kept proceeding slowly before pulling over. When Doggett started to exit the police car, the driver began to pull away again but then stopped. Two detectives approached the Taurus on the driver's side, while Detective Doggett and another detective approached the passenger side.

Illuminating the car's interior with his flashlight, Detective Doggett "[saw] a lot of motion still going on through the rear window." As he got closer, he looked through the rear-passenger window and "[saw] the defendant shoving an object in between the driver's seat and the center console." Doggett could not see what the object was but could see what defendant was doing by "the way he was moving his right arm."

Upon observing defendant's motions, Detective Doggett grew concerned that defendant was trying to conceal a firearm or other type of weapon. Doggett drew his gun and ordered defendant to roll down his windows. Defendant continued his shoving motion between the seat and the console, and Detective Doggett ordered him to roll down the windows twice more before defendant complied. After removing defendant from the Taurus, the detectives searched between the seat and the console and found a .38 caliber revolver

5

loaded with hollow-point bullets. The detectives then arrested defendant and towed the Taurus to headquarters.

A grand jury indicted defendant for second-degree unlawful possession of a handgun, third-degree theft by receiving stolen property, fourth-degree possession of hollow-point bullets, and second-degree certain person not to possess a firearm. In addition to the criminal charges, defendant was given a motor vehicle summons for a tinted windows violation.

B.

Defendant moved to suppress the seized firearm, arguing that the State failed to justify the stop of his vehicle. Detective Doggett was the sole witness at the suppression hearing and testified to having observed tint only on the rear windshield, which is permitted under N.J.S.A. 39:3-74. Doggett further testified that he was able to see clearly enough through the rear windshield to observe defendant moving his hand between the seat and the console. Defendant contended that, because Doggett had "clear vision," the State did not establish a reasonable and articulable suspicion of a tinted windows violation.

At the conclusion of the hearing, the trial court denied defendant's motion. The court deemed credible Detective Doggett's testimony and concluded that the motor-vehicle stop was lawful because "defendant's vehicle

appeared to have tinted windows in violation of [N.J.S.A.] 39:3-75."[2]  The court did not find which of the car's windows were tinted or discuss the degree of window tinting.

Following the denial of his motion to suppress, defendant entered into a plea agreement with the State, pursuant to which he pled guilty to second-degree unlawful possession of a handgun and was sentenced to the recommended five years in prison with a three-and-one-half year period of parole ineligibility.

C.

Defendant appealed the trial court's denial of his motion to suppress, arguing that the State failed to justify the car stop because Detective Doggett did not testify to specific facts supporting his belief that the window tint on defendant's vehicle violated the motor vehicle code.

In an unpublished decision, the Appellate Division affirmed.  Relying on Cohen, 347 N.J. Super. at 380, the court reasoned that an actual violation of N.J.S.A. 39:3-74 is not necessary to support the initial stop so long as the officer had a reasonable articulable suspicion of a motor vehicle violation.

---

[2]  N.J.S.A. 39:3-75 also governs a motor vehicle's windows and windshields. Entitled "Safety glass," that provision prohibits operation of "any motor vehicle equipped with safety glazing material which causes undue or unsafe distortion of visibility or equipped with unduly fractured, discolored or deteriorated safety glazing material."

The court further noted that the "companion statute" N.J.S.A. 39:3-75 provided an additional basis for the stop because the "unsafe distortion of visibility under this statute is not apparently limited to only the windshield and front windows, as it is in N.J.S.A. 39:3-74." The court found, based on Detective Doggett's "unrefuted testimony," that the totality of the circumstances supported a reasonable suspicion of a tinted windows violation.

D.

This Court granted defendant's petition for certification, limited to the question of whether the State established a reasonable and articulable suspicion for the car stop. 248 N.J. 386 (2021). We subsequently granted leave to participate as amici curiae to the American Civil Liberties Union of New Jersey (ACLU) and the Seton Hall School of Law Center for Social Justice (CSJ).

Following this Court's grant of certification, the State moved for a limited remand to the trial court to vacate defendant's convictions and dismiss the charges against him. We granted that motion, reserving the right to proceed with the appeal regardless of the outcome of the remand proceedings.

Although the parties agree there was no reasonable suspicion for the car stop in this case, the issue presented is "of sufficient public importance, likely to surface again, to warrant our deciding it, even in the absence of an actual

8

controversy between the litigants." State v. Kovack, 91 N.J. 476, 486 (1982). Thus, we consider the issues presented by this appeal notwithstanding the stipulation of dismissal presented to and accepted by the trial court.

## II.

Defendant contends that the plain language of N.J.S.A. 39:3-74 is clear and proscribes only tinting on a car's front windshield or front side windows that is "so dark as to be non-transparent or unduly interfere with the driver's vision." Defendant submits that N.J.S.A. 39:3-75 is inapplicable because its plain language "has nothing to do with aftermarket or added window tint" but instead pertains to "safety glass" and "safety glazing material." Defendant argues that because New Jersey law allows for some window tinting, in order to establish reasonable suspicion of a statutory violation, police officers must provide sufficient details to explain their belief that windows were illegally tinted. Defendant contends that, absent such factual support, N.J.S.A. 39:3-74 is unconstitutionally vague and would lead to arbitrary and discriminatory enforcement.

Amici the ACLU and CSJ support defendant's position and largely reiterate defendant's arguments regarding statutory interpretation, unconstitutional vagueness, and pretextual stops. Rather than the fact-specific standard proposed by defendant, however, the CSJ urges this Court to adopt a

9

bright-line rule that officers have a reasonable suspicion only when they are unable to see through window tint to observe a car's occupants.

The State concedes that N.J.S.A. 39:3-74, not -75, governs here. It submits, however, that the law is well-settled and clear, and asks this Court to uphold the Appellate Division's conclusion in Cohen, 347 N.J. Super. at 380, that N.J.A.C. 13:20-33.7 provides the metric for determining whether window tint is lawful under N.J.S.A. 39:3-74. The State maintains that N.J.A.C. 13:20-33.7's window-tint standard is straightforward -- "drivers may add virtually any level of tint to rear windows and windshields, but, unless narrow exceptions are met, may not add any tint to front windows or windshields." Finally, the State argues that, because the record contains nothing to suggest defendant's initial stop was pretextual, this Court should reject defendant's and amici's proposals to alter the factual proofs required to establish reasonable suspicion of a tinted windows violation.

III.

A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A motor vehicle stop by a police officer,

10

no matter how brief or limited, is a "'seizure' of 'persons'" under both the Federal and State Constitutions. State v. Scriven, 226 N.J. 20, 33 (2016) (quoting State v. Dickey, 152 N.J. 468, 475 (1998)). To justify such a seizure, "a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense." Id. at 33-34. "The suspicion necessary to justify a stop must not only be reasonable, but also particularized." Id. at 37. An investigative stop "may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch." State v. Chisum, 236 N.J. 530, 546 (2019) (quoting State v. Coles, 218 N.J. 322, 343 (2014)).

To determine whether reasonable and articulable suspicion exists, a court must evaluate the totality of the circumstances and "assess whether 'the facts available to the officer at the moment of the seizure . . . warrant[ed] a [person] of reasonable caution in the belief that the action taken was appropriate.'" State v. Alessi, 240 N.J. 501, 518 (2020) (alterations and omission in original) (quoting State v. Mann, 203 N.J. 328, 338 (2010)). A motor vehicle stop that is not based on a "reasonable and articulable suspicion is an 'unlawful seizure,' and evidence discovered during the course of an

11

unconstitutional detention is subject to the exclusionary rule." Chisum, 236 N.J. at 546 (quoting State v. Elders, 192 N.J. 224, 247 (2007)).

Because the reasonableness of a motor vehicle stop for tinted windows hinges on the standards set forth in our motor vehicle code, we begin with an interpretive analysis of the statute at issue in this appeal -- N.J.S.A. 39:3-74. As always, the goal of statutory interpretation is to give effect to the Legislature's intent, and "the best indicator of that intent" is the statute's plain language. DiProspero v. Penn, 183 N.J. 477, 492 (2005). If the plain language is clear and unambiguous, "then our interpretative process is over." State v. Rodriguez, 238 N.J. 105, 113 (2019) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). If the statutory language is ambiguous, or if a plain reading of the statute would lead to an absurd result, we may consider extrinsic aids, including legislative history. Ibid. We also note that "[t]he Legislature, presumably, writes motor-vehicle laws in language that can be easily grasped by the public so that every motorist can obey the rules of the road." Scriven, 226 N.J. at 34.

## B.

Defendant was cited for a tinted windows violation pursuant to N.J.S.A. 39:3-74, entitled "Windshields must be unobstructed and equipped with cleaners." The statute provides in pertinent part that

12

[n]o person shall drive any motor vehicle with any sign, poster, sticker or other non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the commissioner.

No person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides.

[N.J.S.A. 39:3-74.]

Enacted in 1921 and last amended in 1937, N.J.S.A. 39:3-74 pre-dates automotive window tinting. Cohen, 347 N.J. Super. at 379. However, the provision has been consistently cited as the statutory basis for tinted window stops. See, e.g., id. at 380; Saint-Jean v. County of Bergen, 509 F. Supp. 3d 87, 105 n.13 (D.N.J. 2020) (noting that section 74 is the statute most "frequently cited in the sparse case law regarding tinted windows").

In Cohen, the Appellate Division upheld a trial court's finding of reasonable suspicion based on an officer's observation that the front driver and passenger side windows "were so darkly tinted as to obstruct vision." 347 N.J. Super. at 380. Relying on State v. Oberlton, 262 N.J. Super. 204 (Law Div. 1992), the court held that "N.J.S.A. 39:3-74 prohibits the use of tinted windows which fail to meet the applicable standard now set forth in N.J.A.C. 13:20-33.7," which, at the time, established inspection requirements for

passenger vehicles. Ibid. However, the court reasoned that it did not matter "whether the equipment used violate[d] N.J.S.A. 39:3-74, because the fact that a defendant is later found not guilty does not denigrate the propriety of the initial stop so long as it is based on a reasonable articulable suspicion that a motor vehicle violation has occurred." Ibid. The Appellate Division further cited "the community caretaking function" as an independent basis for the stop, because "the officer's belief that the darkly tinted windows represented a significant obstruction" justified "inspection of what appear[ed] to be a hazardous vehicular condition that deviate[d] from the norm." Id. at 381.

As noted, N.J.S.A. 39:3-74 provides that: "No person shall drive any motor vehicle with any . . . non-transparent material upon the front windshield, . . . or front side windows of such vehicle . . . ." (emphases added). Here, Detective Doggett's testimony establishes only that the arresting officers observed window tint on the rear windshield of defendant's vehicle. Under the statute's plain language, the tint on defendant's rear windshield could not constitute a violation of N.J.S.A. 39:3-74. It did not give rise to the reasonable and articulable suspicion necessary to justify this motor vehicle stop.

We therefore consider the other authorities and principles on which the State and the trial and appellate courts relied.

14

C.

In this case, both the motion judge and the Appellate Division cited N.J.S.A. 39:3-75 as an additional statutory basis for the stop of defendant's vehicle. Entitled "Safety glass," N.J.S.A. 39:3-75 prohibits the use of "safety glazing material which causes undue or unsafe distortion of visibility or . . . unduly fractured, discolored or deteriorated safety glazing material" on any of a vehicle's windows. The provision expressly refers to "safety glazing material," which is defined as (1) "glass so treated or combined with other materials as to reduce . . . the likelihood of injury to persons by objects from exterior sources or by glass when the glass is cracked or broken," or (2) "other glazing materials, such as plastics, produced for the purpose of safety in glazing; or a combination of safety glass and other safety glazing material." N.J.S.A. 39:3-75. The plain language of section 75 indicates that it is concerned solely with the quality and maintenance of such safety glazing material, not aftermarket tinted window film. As the State now concedes, that provision has no bearing here.

Other statutory provisions addressing motor vehicle window tinting are equally inapplicable to the present circumstances. N.J.S.A. 39:3-75.1 provides an exception to window tinting restrictions, permitting the application of certain tinting materials on car windows and windshields for medical reasons

15

not claimed here. N.J.S.A. 39:3-75.2 authorizes the promulgation of rules and regulations specifying standards for permissible window tint, including allowable percentages of light transmittance, but does not itself establish such specifications. In short, no statute supports the stop at issue.

Related regulations are equally inapposite. N.J.A.C. 13:20-33.7 delineates additional window tint specifications, and the Appellate Division has construed N.J.S.A. 39:3-74 as prohibiting tinted windows that do not meet that regulation's requirements. Cohen, 347 N.J. Super. at 380. Through 2013, all motor vehicles had to comply with N.J.A.C. 13:20-33.7's safety requirements to pass biannual inspection.

N.J.A.C. 13:20-33.7 contains two paragraphs -- (d) and (g) -- that set forth standards for tinted windows, but neither justifies the stop here. N.J.A.C. 13:20-33.7(d) prohibits the addition of any tint only to front windows, front windshields, and other areas not relevant here. N.J.A.C. 13:20-33.7(g), meanwhile, addresses rear windows and windshields -- but the statute authorizes the application of tint to those surfaces so long as the car has an exterior wing mirror on each side and vision through the windows and windshields is only partially obscured.

Even if N.J.A.C. 13:20-33.7 did prohibit the tint observed on defendant's rear windshield, moreover, the regulation no longer applies to non-

16

commercial vehicles. In 2013 the Motor Vehicle Commission amended the title of N.J.A.C. 13:20-33.7 and many adjacent sections, adding the precursor "Commercial vehicle inspection" in recognition of a 2010 bill that narrowed the biannual inspection requirement for private cars to "emissions and emissions-related items." See 46 N.J.R. 103(c); L. 2010, c. 29 (emphasis added). Accordingly, since the 2013 amendment, N.J.A.C. 13:20-33.7's safety requirements have not applied to passenger vehicles like defendant's.

We therefore depart from Cohen to the extent that it ties violations of N.J.S.A. 39:3-74 to the standards set forth in N.J.A.C. 13:20-33.7. We further note that N.J.A.C. 13:20-1.2(a) is likewise inapplicable here because its light transmittance standard applies only to a vehicle's front windshield where a Medical Exemption Certificate has been issued.

Finally, the facts of this case do not support application of the community caretaking function, which may be implicated where police observe "something abnormal . . . concerning the operation of a motor vehicle." Cohen, 347 N.J. Super. at 378. Unlike the darkly tinted front driver- and passenger-side windows that prompted the investigatory stop in Cohen, defendant's tinted rear windshield could not be considered a "significant obstruction" of the driver's vision or "a hazardous vehicular condition that deviates from the norm," see id. at 381, because, whether or not defendant's

17

car was equipped with exterior side mirrors, New Jersey law allows for rear window tinting on passenger vehicles. Furthermore, Detective Doggett testified that he was able to see through the rear windshield that there was "just the driver" making furtive motions inside the car.

We thus hold that the initial stop of defendant's vehicle was unconstitutional because no statutory or regulatory provision forms the basis for a reasonable and articulable suspicion that defendant committed a tinted windows violation.

D.

For completeness and future guidance, we consider defendant's contention that N.J.S.A. 39:3-74 is unconstitutionally vague unless officers are required to provide sufficient factual details regarding which windows were tinted and the degree of window tint. Without such specificity, defendant argues, the statute would allow police to stop anyone with any degree of window tint on any car window, thereby setting the stage for arbitrary and discriminatory enforcement.

Every statute enacted by our Legislature carries a strong presumption of validity, "particularly . . . when a statute attempts to protect the public health, safety, or welfare." State v. Lenihan, 219 N.J. 251, 266 (2014) (quoting In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497 (1989)). "[A]ny act of the

18

Legislature will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt," and our courts will construe a challenged statute to sustain its constitutionality when possible. Ibid. (quoting State v. Muhammad, 145 N.J. 23, 41 (1996)).

A statute is unconstitutionally vague, in violation of due process, if "persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Ibid. (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998)). Put differently, a statute must "give fair notice of conduct that is forbidden. A defendant should not be obliged to guess whether his conduct is criminal. Nor should the statute provide so little guidance to the police that law enforcement is so uncertain as to become arbitrary." Brown v. Newark, 113 N.J. 565, 577 (1989) (citations omitted) (quoting State v. Lee, 96 N.J. 156, 166 (1984)). That principle holds true for motor vehicle laws like N.J.S.A. 39:3-74, which, again, we presume to be written "in language that can be easily grasped by the public so that every motorist can obey the rules of the road." Scriven, 226 N.J. at 34.

As already discussed, reasonable suspicion was lacking in this case because the arresting officer testified only to observing tint on defendant's rear windshield, through which the officer could see defendant motioning within the car. However, the parties remain divided over the degree of window tint

19

needed to justify a stop for a tinted windows violation with respect to a car's front windshield and front side windows.

Again, N.J.S.A. 39:3-74 provides in relevant part that "[n]o person shall drive any motor vehicle with any . . . non-transparent material upon the front windshield, . . . or front side windows of such vehicle." (emphasis added). The statute does not expressly define the term "non-transparent." Defendant interprets "non-transparent" as proscribing window tint that is so dark it is "no longer able to be seen through." The State, however, asserts that the statute prohibits the addition of any tint to front windows or front windshields unless one of N.J.A.C. 13:20-33.7's exceptions is satisfied, as evidenced by the 2003 amendment to the Consumer Fraud Act requiring sellers and installers of automotive window tint to notify customers "that the application of [tinting] materials or film to the windshield or the front windows to the left and right of the driver of any motor vehicle registered in the State is a violation of State law and regulation." N.J.S.A. 56:8-117(a). The statute also prohibits tint sellers from installing or applying "any such material or film on or to the windshield or the windows to the left and right of the driver of any motor vehicle registered in the State unless" the driver presents proof of a medical exemption. Id. at (b).

20

Notwithstanding the provisions of N.J.S.A. 56:8-117, which do not establish a violation of the motor vehicle laws, we may not disregard the plain language of N.J.S.A. 39:3-74. "It is not the function of this Court to 'rewrite a plainly written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero, 183 N.J. at 492 (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

The dictionary definition of "non-transparent" refers to the definition of "transparent," which is defined, in pertinent part, as "fine or sheer enough to be seen through"[3] -- essentially, "able to be seen through." See N.J.S.A. 1:1-1 ("In the construction of the laws and statutes of this state, both civil and criminal, words and phrases . . . shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

We hold that the term "non-transparent" used in N.J.S.A. 39:3-74 is not impermissibly vague and means that reasonable suspicion of a tinted windows

---

[3] Nontransparent, Merriam-Webster, https://www.merriam-webster.com/dictionary/nontransparent (last visited May 31, 2022); Transparent, Merriam-Webster, https://www.merriam-webster.com/dictionary/transparent (last visited May 31, 2022).

violation arises when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car. We believe that this construction "can be easily grasped by the public." Scriven, 226 N.J. at 34.

The facts of this case provide an illustrative example of window tint that does not meet the definition of the statutory term "non-transparent." Detective Doggett testified that, despite the tinting on defendant's rear windshield, he was able to see with just the police SUV's headlights and street lighting that there was only one person in the vehicle and that the person was making movements. Such a degree of window tint -- which allows the officer to see both the number of people in the vehicle and their movements -- is not "non-transparent" within the meaning of the statute. In order to establish a reasonable suspicion of a tinted windows violation under N.J.S.A. 39:3-74, the State will therefore need to present evidence that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside.

Our task in this appeal has been to interpret the language of a statute enacted a century ago. The Legislature may, of course, modify the statute's text.

22

## IV.

For the reasons expressed, we reverse the judgment of the Appellate Division.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE SOLOMON's opinion.